**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SYED ALI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-06148 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| VOLKSWAGEN GROUP OF | ) | |
| AMERICA, INC., *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In July 2017, Syed Ali was driving an Audi Q5 on a flat and smooth roadway in DuPage County, Illinois, when he struck a piece of debris on the road. R. 26, Am. Compl. ¶ 7. The car ignited into flames, and Ali suffered multiple injuries. *Id.* Around two years later, Ali brought a products liability suit against the alleged domestic manufacturer of the car, Volkswagen Group of America, in Illinois state court. Shortly after that, Volkswagen removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. R. 1, Removal Notice. In the Notice of Removal, Volkswagen alleged that Ali is an Illinois citizen, while Volkswagen is a citizen of New Jersey and Virginia. *Id.* ¶¶ 5-6.

After the removal, Ali sought leave to file an amended complaint naming Volkswagen's overseas parent company, Audi AG, as a Defendant. R. 39, Exh. A at 3. The Court granted Ali's request to join Audi. *Id.* But when Ali filed the Amended Complaint, he not only added Audi, but he also named—for the first time—the car dealership where the car was purchased: McGrath Imports, Inc., which does business

as McGrath Audi. Ali alleged one claim against McGrath under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

McGrath, however, is also an Illinois citizen. Am. Compl. ¶ 4. Because the addition of McGrath potentially defeats the complete diversity required for this case to remain in federal court, the Court directed the parties to submit position papers on the issue of subject matter jurisdiction. R. 39 (Volkswagen Statement); R. 41 (Ali Response); R. 43 (Volkswagen Reply); R. 52 (McGrath Statement); R. 56 (Ali Response). The Defendants argue that the joinder of McGrath was improper and the case should thus remain in federal court, while Ali argues the opposite. For the reasons explained below, the Court agrees with the defense.

## I. Legal Standard

A defendant may remove an action filed in state court to federal court in any case in which the plaintiff could have filed the case in federal court in the first place. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Where, as here, defendants invoke diversity jurisdiction, the defendants must demonstrate complete diversity of citizenship and an amount in controversy exceeding $75,000. *Id.*; *see also* 28 U.S.C. § 1332(a). Ali's Original Complaint did not pose any issues with diversity jurisdiction. It is only now, after the joinder of McGrath, that diversity of citizenship is called into question.

Post-removal joinder is governed by 28 U.S.C. § 1447(e). When diversity jurisdiction is the basis for removal, and a plaintiff seeks—post-removal—to join a defendant who would defeat complete diversity, courts have "two options: (1) deny joinder, or (2) permit joinder and remand the action to state court." *Schur*, 577 F.3d at 759. That being said, if an additional, non-diverse defendant is joined after removal, and a court did not have the opportunity to review the joinder of the party in the first instance, the court may still retroactively review the joinder. *Id.* at 762 ("[B]ecause the district court would have been forced to remand without ever having determined the joinder's propriety, it could later invoke its authority under § 1447(e) to make that determination.").

## II. Analysis

Here, the Defendants contend that Ali improperly and fraudulently joined McGrath as a defendant under both 28 U.S.C. § 1447(e), which governs post-removal joinder, and Rule 15 of the Federal Rules of Civil Procedure, which governs amendments to pleadings. The defense is right: Ali improperly joined McGrath.

## A. Section 1447(e)

First up is Section 1447(e). As a threshold matter, the Seventh Circuit has made clear that district courts are allowed to conduct a Section 1447(e) analysis even after a party has already been joined (as distinct from analyzing a preemptive request to join a party). *Schur*, 577 F.3d at 762. Here, the Court did not have the opportunity to review the joinder of McGrath before Ali filed the Amended Complaint, because he

had sought leave only to join Audi, and the addition of McGrath was a surprise. So the Court will consider afresh the propriety of joining McGrath.[1]

The Seventh Circuit in *Schur* set forth four factors to consider in the post-removal joinder analysis: (1) the plaintiff's motive for seeking joinder; (2) the timeliness of the amendment; (3) whether the plaintiff will be prejudiced if joinder is denied; and (4) other equitable considerations. *Schur*, 577 F.3d at 759. The Court will now consider each factor in turn.

### 1. Motive

In evaluating a plaintiff's motive for joining a nondiverse party in the post-removal context, the primary issue is whether the plaintiff's purpose is "to defeat federal jurisdiction." *Schur*, 577 F.3d at 759. The Seventh Circuit has explained that this element can encompass an analysis of fraudulent joinder—although the doctrine of fraudulent joinder is not directly applicable to the post-removal context, a court may consider fraudulent joinder while evaluating the plaintiff's motive for joining a non-diverse party after removal. *Id.* at 764. Fraudulent joinder "is not *dispositive* of whether joinder is improper; it is simply another tool in the district judge's belt for scrutinizing the plaintiff's motive for joining a nondiverse party." *Id.* (emphasis in original). A defendant can successfully invoke the fraudulent joinder doctrine by

---

[1]Ali only sought leave from the Court to amend his Complaint to add the overseas parent company, and he never got permission from the Court to add McGrath as a party. Ali was required to seek permission under Fed. R. Civ. P. 15(a)(2) because it was outside the 21-day window for amendments as a matter of course. If he had done so, then the Court likely would have allowed the proposed amendment at that time, given that it was his first motion to amend the complaint. Even if Ali had followed the proper procedure, though, the issue of diversity jurisdiction would have eventually arisen anyway.

showing that "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). The standard is whether there is no reasonable possibility of success on the claim.[2] *Id.*

Here, the Defendants argue that Ali's motive is suspicious because Ali could have brought claims against McGrath in the original complaint but waited until after removal to federal court to do so. R. 39 at 3-5. The defense also contends that Ali's pre-suit settlement overtures to Volkswagen (but not to McGrath) suggest that Ali never intended to bring claims against McGrath. *Id.* Based on that, the Defendants assert that Ali fraudulently joined McGrath, and because Ali has no reasonable possibility of prevailing against McGrath, the Court should now dismiss McGrath from the action under the doctrine of fraudulent joinder.[3] *Id.* at 6.

Ali counters that he does indeed have a viable claim against McGrath, so the motive for joinder is irrelevant. R. 41 at 3. On this point, Ali is right. As the Seventh Circuit has made clear, the important question when considering the joinder of a nondiverse defendant is "whether there is any reasonable possibility that the plaintiff could prevail against [them]." *Schur*, 577 F.3d at 764 (citing *Poulos*, 959 F.2d at 73)

---

[2]*Schur* reviewed the district court's application of the fraudulent-joinder doctrine in combination with its analysis of the motive for joinder. Because fraudulent joinder is a "tool" for analyzing motive, *Schur* reviewed these two issues together. *Schur* 577 F.3d at 764.

[3]Both parties rely on *Gross v. FCA US LLC*, 2017 WL 6065234 at *5 (N.D. Ill. Dec. 7, 2017) as support for their respective fraudulent-joinder arguments. But the reliance on *Gross* is misplaced because *Gross* did not actually make a determination either way on fraudulent joinder. *Id.* It thus has no bearing on this case.

(cleaned up).[4] In other words, a viable claim obviates the need to inquire further into motive, because a court cannot conclude as a matter of law that the motive for joinder is solely to destroy diversity. So the central issue before the Court—both under the first *Schur* element of motive and the fraudulent-joinder determination—is whether Ali has a viable claim against McGrath. If he does, then the joinder is not fraudulent or improper.

Here, Ali brings one claim against McGrath under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. Ali alleges that the Defendants represented the Audi vehicle as "luxurious" but that it was actually "not safe to operate upon a flat roadway," as evidenced by the car catching on fire. Am. Compl. at ¶ 65. The Defendants offer a number of reasons why Ali has no chance of prevailing against McGrath on the Fraud Act claim, while Ali maintains that because of the high standard for fraudulent joinder, the Defendants cannot show by "clear and convincing evidence" that his claim would not succeed. *Poulos*, 959 F.2d at 73. For the reasons set forth below, the Court concludes that Ali's claim is not viable, so the *Schur* factor of motive weighs heavily against him.

### a. Definition of "Consumer"

First, the Defendants argue that Ali is not considered a "consumer" under the Fraud Act and thus has no chance of proving actual damages. R. 39 at 7. The Fraud Act prohibits "unfair or deceptive acts or practices, including ... fraud, false pretense,

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

6

false promise, misrepresentation or the concealment, suppression or omission of any material fact" in the "conduct of any trade or commerce." 815 ILCS 505/2. Generally, plaintiffs invoking the Fraud Act must allege that they are "consumers" under the Act. *Bank One Milwaukee v. Sanchez,* 783 N.E.2d 217, 219 (Ill. App. Ct. 2003). *See also* 815 ILCS 505/1(e) (defining "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"). The Fraud Act grants a cause of action to "[a]ny *person* who suffers actual damage as a result of a violation of this Act committed by any other person." 815 ILCS 505/10(a) (emphasis added). The Act in turn defines "person" as including "any natural person or his legal representative, partnership, corporation … company, trust, business entity or association, and any agent, employee, salesman … thereof." 815 ILCS 505/1(c).

Under the Fraud Act, there is "no distinction between natural persons and businesses." *Bank One of Milwaukee*, 783 N.E.2d at 221. Both natural persons and businesses are granted "the status of person" and "[b]y virtue of this status, both are further granted the right to bring an action under the Act." *Id.* (cleaned up). So, what does this mean for Ali? The Defendants argue that because the car that Ali was driving was titled to a corporation, Homebound Physicians, LLC, Ali is not the appropriate plaintiff to bring a cause of action under the ICFA. *See* R. 39 at 7-8. Ali does not dispute that the car was titled to Homebound Physicians. But he maintains that it does not matter who the vehicle was titled to because he was personally injured when the car caught fire, and he might or might not have been employed by

Homebound Physicians, LLC. *See* R. 41 at 8. (The Complaint is not clear on the exact nature of his relationship to Homebound Physicians.)

Specifically, Ali argues that the Fraud Act "encompasses any conduct by him for his business use when the product is used in his business and is not resold as part of its ordinary business." R. 41 at 9. Ali also asserts that the title "is irrelevant to the fact that Plaintiff, as and for the agent of his business, was the person who was physically present and bought the luxury vehicle from McGrath that became an inferno. Businesses are defined as consumers … ." R. 56 at 8.

It is true that, under the Fraud Act, businesses of course can qualify as "consumers." But just because the Fraud Act covers corporate entities, the correct legal entity still must bring the cause of action in any specific case. A natural person cannot simply stand in for a business in bringing a claim if the natural person is not otherwise a "consumer" under the Act. To put it another way, Homebound Physicians might have a cause of action here if it purchased the car, but that does not automatically mean *Ali* also has a cause of action just because he may have been affiliated with Homebound Physicians.

So, who was the buyer and who owns the car are indeed relevant facts here. Based on the statutory text, the Fraud Act grants a cause of action to any "person" who "*purchases* or contracts for the purchase of merchandise… ." 815 ILCS 505/1(e) (emphasis added). Here, Ali does not plead any facts as to the actual *purchase* of the car. Nor does he fully explain his relationship to the company that owned the car, Homebound Physicians. In his response filings, Ali implies that he owns the business,

but even that is not clear. R. 41 at 9 ("The Act includes the Plaintiff regardless of how his car is titled because it encompasses any conduct by him *for his business*") (emphasis added); R. 56 at 11 ("[A]s is clear, McGrath sold the vehicle to the Plaintiff personally, and whether the representations was [sic] made to him personally or as an agent, the omissions and misrepresentations were made to him personally."). Ali further contends that "no rule of law holds that only a business entity of the vehicle can maintain the occupant's personal injury claim." *Id.* But there are two problems with this contention: (1) Ali fails to cite any cases to support it (nor could the Court locate any); and (2) Ali has not brought a *personal-injury* suit against McGrath, but rather a statutory fraud claim.

In short, Ali simply does not allege any facts to suggest that he personally *purchased* the vehicle. Because Ali is not a "consumer" as defined by the Fraud Act, he is the wrong party to bring a claim against McGrath.

### b. Heightened Pleading Standard Under Rule 9

Even if Ali had alleged facts or cited precedent to support his argument that he is a "consumer" for purposes of the Fraud Act, the claim is still likely to fail because Ali has not pled sufficient facts to suggest that he has a viable fraud claim. Because Ali joined McGrath under a fraud theory, Ali must meet the heightened pleading standard for fraud claims as required under Rule 9 of the Federal Rules of Civil Procedure. *See Camasta v. Jos. A. Banks Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) ("Since [plaintiff's] claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal

Rule of Civil Procedure 9(b).”). Specifically, Rule 9(b) requires a pleading to “state with particularity the circumstances constituting fraud.” Fed. R. Civ. P. 9(b). Given this heightened pleading standard, Rule 9(b) generally requires the pleading to describe “the who, what, when, where, and how of the fraud.” *Camasta*, 761 F.3d at 737 (cleaned up).

Ali does not meet this pleading standard. He did not allege any facts about the actual purchase of the car, nor did he plead any facts about the actual misrepresentations McGrath made at the time of purchase. Ali has not come close to the “who, what, where, when, and how” standard under Rule 9(b). Although Rule 9(b) does not require the plaintiff to offer evidence that the misrepresentations were actually false, it does generally require “the plaintiff to state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.” *Camasta* 761 F.3d at 737 (cleaned up). Because Ali must plead with particularity the misrepresentations upon which he relied, and he has not done so, it is highly unlikely that the Amended Complaint would survive a motion to dismiss (see discussion of Rule 15, *infra*.).[5]

---

[5]Defendants also assert that Ali’s products-liability claims must fail because the car he was driving was destroyed pre-suit, so from an evidentiary standpoint, he will not be able to establish proximate cause. R. 39 at 9-10. This is neither here nor there. The car’s destruction turns this inquiry into a fact-intensive examination of whether there is a spoliation of evidence problem and the possibility of sanctions. *See, e.g., Bracey v. Grondin*, 712 F.3d 1012, 1016-17 (7th Cir. 2013). The Defendants would also need to claim that the evidence was destroyed in bad faith, which they did not do. *Id.* None of this is relevant to the fraudulent joinder inquiry.

All in all, because Ali has failed to show that he has a viable Fraud Act claim against McGrath, it is much more likely that his motive in joining McGrath was to destroy diversity jurisdiction. So motive cuts against allowing joinder.

### 2. Timing of the Joinder

Turning to the next consideration under *Schur*, the Defendants argue that the timing of Ali's Amended Complaint raises suspicion that the joinder of McGrath was solely for the purpose of defeating diversity jurisdiction. R. 39 at 5-6. The Court agrees. Because Ali joined McGrath "immediately after removal, but without additional discovery providing a legitimate reason for doing so," the timing suggests that the joinder occurred only to defeat diversity jurisdiction. *Schur*, 577 F.3d at 767. Ali claims that the Defendants "goaded" him "into an amendment given [their] lack of pre-suit candor." R. 41 at 5. According to Ali, Volkswagen misled him by waiting for the suit to be filed and only then "denying it was the proper party to be sued." *Id*. But this excuse is unconnected to the joinder of McGrath. Ali sought leave to amend the complaint so that he could join the overseas parent company (Audi). If Volkswagen "goaded" Ali into an amendment, it was the joinder of Audi, not McGrath. There is no blame on timing that can be laid at the defense's feet.

Moreover, Ali implies that he was somehow involved in the purchase of the car from McGrath. Am. Compl. ¶ 64. If this is the case, then he knew about McGrath from the beginning of the suit (and actually earlier) and could have named McGrath as a defendant in the initial complaint. Nothing happened in the interim that gave rise to new information implicating McGrath. So the timing of the joinder weighs

11

heavily in favor of the defense argument that the joinder was intended to destroy complete diversity.

### 3. Injury

The third factor under *Schur* for determining the propriety of a post-removal joinder of a non-diverse party is "whether the plaintiff will be significantly injured if joinder is not allowed." *Schur*, 577 F.3d at 759. Ali argues that the Fraud Act allows for the recovery of attorneys' fees and costs, which he will not be able to take advantage of if joinder is denied. R. 41 at 7. That is not necessarily the case. By denying joinder, the Court is simply dismissing McGrath as a party without prejudice. Ali is free to bring a Fraud Act claim against McGrath in state court (assuming, of course, that the statute of limitations has not run out on the claim against McGrath).

As mentioned earlier, Ali could have brought a Fraud Act claim against McGrath when he filed his initial suit against Volkswagen. Even with the mistakes surrounding whether to sue the overseas parent company, there is no reason Ali could not also have brought a claim against McGrath. Even if Volkswagen might have been less than candid about its relationship to Audi, this has no bearing on whether Ali knew about *McGrath*'s role in the claim under the Fraud Act. If it is too late to bring a claim against McGrath in state court, that was a product of Ali's delay in filing a lawsuit against McGrath. All in all, the injury factor does not weigh in favor of allowing joinder.

Taken together, under *Schur*, the joinder of McGrath would be improper and would only serve to destroy complete diversity.[6] So, under 28 U.S.C. § 1447(e), McGrath may not be joined, and the proper relief is to dismiss McGrath from the case without prejudice. Diversity jurisdiction remains intact.

### B. Rule 15 Analysis

Apart from the 28 U.S.C. § 1447(e) analysis, the Defendants also argue that joinder is improper under Rule 15 of the Federal Rules Civil Procedure. Rule 15 provides that if a party wishes to amend its pleading after 21 days of the initial service, then it must seek leave from the court or the opposing party. Fed. R. Civ. P. 15. District courts may deny an amendment "where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011) (cleaned up). "District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Management, LLC*, 721 F.3d 865, 869 (7th Cir. 2013) (cleaned up).

As stated before, Ali has not pled enough facts under the heightened pleading standard of Rule 9(b) to survive a motion to dismiss (at least in federal court). In order to succeed on a motion to dismiss, Ali would, again, have to plead with particularity the "who, what, where, when, and how" of the fraud and misrepresentations he relied upon. *Camasta*, 761 F.3d at 737 (cleaned up). Because he has not done so, it is unlikely he would survive the motion to dismiss. As a result, the amendment—adding

---

[6]The final *Schur* factor is "any equitable considerations." *Schur* 577 F.3d at 759. Because neither party offered any arguments about further equitable considerations, the Court forgoes an analysis of it.

McGrath as a defendant—is futile, and the Court would thus deny joinder under Rule 15 as well.

### III. Conclusion

McGrath was not properly joined in this case. So McGrath is dismissed from this case without prejudice, diversity of citizenship is intact, and the case shall proceed in federal court. The parties shall confer on a discovery schedule and file a status report by September 16, 2020. The status hearing of September 4, 2020, is reset to September 25, 2020, at 8:30 a.m., but to track the case only (no appearance is required, the case will not be called). Instead, the Court will review the status report and set the schedule.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 3, 2020